**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

**United States of America**,

    *Plaintiff*,

**v.**                **Case No. 3:17-cr-174**
                  **Judge Thomas M. Rose**

**Joel Montgomery,**

    *Defendant*.

---

**ENTRY AND ORDER GRANTING IN PART, DENYING IN PART AND FINDING MOOT IN PART DEFENDANT'S MOTION FOR RETURN OF PROPERTY (ECF 56). THE UNITED STATES IS ORDERED TO RETURN DIRECTLY TO MR. MONTGOMERY: (1) THE ITEMS LISTED IN EXHIBIT A; (2) CELLULAR PHONE SEIZED FROM HIM AT THE TIME OF HIS ARREST; (3) ATF 67, A BOOK LISTED ON GOVERNMENT EXHIBIT C; (4) 1B99, 1B97, 1B96, 1B94, 1B89, 1B88, 1B87, 1B84, 1B83, 1B82, 1B81, 1B71, 1B61, 1B56, 1B40, 1B34, 1B33, ATF23, 1B30 AND 1B29 LISTED ON EXHIBIT F. BECAUSE THE UNITED STATES ALREADY HAS RETURNED TO MR. MONTGOMERY ITEMS IN GOVERNMENT EXHIBIT B, THE COURT FINDS THIS PORTION OF THE MOTION MOOT. THE UNITED STATES IS ORDERED TO RETURN TO A DESIGNATED FFL: (1) THE TRANSFERABLE FIREARMS LISTED IN GOVERNMENT EXHIBIT C; AND (2) 1B76, 1B85, 1B93, 1B100, 1B101, 1B102, 1B104 (VARIOUS GUN AND SMOKELESS POWDERS) LISTED IN GOVERNMENT EXHIBIT F. THE COURT DENIES MR. MONTGOMERY'S MOTION TO RETURN ALL OTHER PROPERTY LISTED ON GOVERNMENT EXHIBITS D, E, AND F, INCLUDING: (1) ALL OF THE ITEMS LISTED ON EXHIBIT D; (2) ALL OF THE ITEMS LISTED ON EXHIBIT E; AND (3) ATF 73 (THE UNREGISTERED SILENCER), ATF 64 (BLASTING CAPS), AND 1B95, 1B86, 1B31, 1B32 (MIXED TANNERITE AND EXPLODING TARGETS) ON GOVERNMENT EXHIBIT F.**

---

1

Defendant Joel Montgomery has filed a motion seeking the return of property that authorities lawfully seized from his residence pursuant to various federal and state search warrants during the late 2010s. Following Mr. Montgomery's sentencing and the conclusion of the criminal case against him, the Court conducted a series of hearings on his motion.

## I    BACKGROUND

### A. The Greene County Search Warrant

During July 2015, the Greene County Sheriff's Office (GCSO) executed a state search warrant at Mr. Montgomery's home in Spring Valley, Ohio, searching for evidence concerning a state criminal damaging investigation. See PSR ¶ 19; see also R. 56.3, Exhibit B1, GCSO Property Inventory Form. During that search, the GSCO seized over 100 firearms from the residence. See PSR ¶ 19. As Mr. Montgomery acknowledged in filings with this Court, the GSCO returned these firearms to him sometime prior to October 2017. See R. 25, Defendant's Motion to Revoke Detention Order ("Despite the government's prior knowledge of these convictions, they nonetheless returned the seized firearms to Mr. Montgomery shortly after the search").

### B. The Federal Search Warrants

Between 2015 and 2017, the United States executed three search warrants relating to Mr. Montgomery or his residence. First, during July 2015, the Bureau of Alcohol, Tobacco, and Firearms (ATF) searched pursuant to a federal warrant the GCSO storage facility housing the firearms that the state had seized from Mr. Montgomery and later ultimately returned to him. See R. 56.2, Def. Ex. B, Search Warrant for Greene County Storage Facility, Case No. 3:15mj231. In executing this warrant, ATF located and seized a handful of suspected contraband, including, among other things: a homemade silencer; a Rapid Fire machinegun; two unmarked, privately

2

manufactured Maadi-Griffin rifles; and several firearm receivers. See id.

Second, during October 2015, federal agents executed on the same day two federal search warrants at Mr. Montgomery's home. See PSR ¶ 25; see R. 56.4, Def. Exhibit C, Inventory for October 2015 Search Warrants at Spring Valley Residence, Case Nos.3:15mj421 and 3:15mj449. Seeking evidence concerning firearms offenses and Mr. Montgomery's possession of stolen government property, agents seized a variety of materials such as electronic media, blasting caps, and components of an Air Force missile warning system. See PSR ¶ 25; see R. 56.4, Def. Exhibit C, Inventory for October 2015 Search Warrants at Spring Valley Residence, Case Nos.3:15mj421 and 3:15mj449. Over the next two years, agents reviewed the seized electronic media and continued their investigation of Mr. Montgomery. See PSR ¶¶ 26- 29.

In October 2017, law enforcement received a tip that Mr. Montgomery was engaging in erratic behavior. See PSR ¶ 29. According to the tipster, Mr. Montgomery had advised that he (Mr. Montgomery) had to leave town or otherwise he would kill people. See id. Mr. Montgomery further had indicated that, when he died, he planned to take people with him. Based on this information, federal agents obtained another search warrant for the Spring Valley residence – this time seeking evidence concerning, among other things, unlawful possession of destructive devices and explosive materials. See R. 56.1, October 2017 Search Warrant and Inventory for Spring Valley Residence, Case No. 17mj490. Executed during October 2017, this warrant resulted in the seizure of additional materials from Mr. Montgomery's home, including: Tannerite, ball bearings and other components of a suspected destructive device. See id.

### C. Montgomery's Prosecution

In October 2017, a federal grand jury returned a multicount indictment against Mr.

Montgomery, charging him with violations of 18 U.S.C. § 641 (possession of stolen government property) and 26 U.S.C. § 5861(d) (possession of an unregistered silencer).[1] See R. 14, Indictment. After several continuances of his trial date, Mr. Montgomery ultimately pleaded guilty to these charges during December 2019. See R. 52, Minute Entry; R. 55, Plea Agreement. Three months later, in late February 2020, the Court sentenced Mr. Montgomery to 33-months of imprisonment for these offenses and ordered the forfeiture of the unregistered silencer that he possessed. See R. 59.

### D. The Motion for Return of Property

Shortly before his sentencing hearing, Mr. Montgomery filed a motion seeking the blanket return of items seized pursuant to the state and federal search warrants described above. See R. 56, Motion for Return of Property. After conducting hearings on this motion during September and November 2020, the Court received into evidence multiple exhibits as well as the testimony of FBI Special Agent Sue Clark and Mr. Montgomery. Based on these materials, the Court makes the following factual findings:

Except as noted below, Government Exhibits A through F represent the totality of items that federal agents seized in this matter pursuant to federal warrants issued in Case Nos. 3:15mj231, 3:15mj421, 3:15mj449, and 3:17mj490. When questioned if there were other materials seized from him but not included on these lists, Mr. Montgomery identified a single item – namely, a cellular telephone taken from him at the time of his arrest in October 2017.[2] See R. 73, 11/20/20

---

1 Subsequent superseding indictments added additional charges against Mr. Montgomery, such as improper storage of explosive materials and interstate threats to injure by means of fire or explosives.

2 Mr. Montgomery also raised concerns over a cellular telephone seized from his adult daughter. Mr. Montgomery has not established standing to challenge that seizure and, in any event, the United States asserts it agreed to make arrangements to return that item to her.

Hearing Tr. at 617- 19. Notably, he neither made a claim nor submitted evidence demonstrating that the United States had in its possession the over 100 firearms that the GCSO seized from him during July 2015. See id. Through previous motions filed with this Court, he, in fact, conceded that law enforcement already had returned these firearms to him. See R. 25, Defendant's Motion to Revoke Detention Order.

Government Exhibits A – C: The parties have no dispute concerning these exhibits. See 9/1/2020 Minute Entry. Specifically, the United States has agreed to return to Mr. Montgomery without any preconditions the items in Government Exhibit A. See Government Exhibit A. Government Exhibit B lists items that the government already has returned to the defendant. See Government Exhibit B. Finally, other than the item designated ATF 67, Government Exhibit C contains firearms that cannot be surrendered to Mr. Montgomery as a convicted felon but rather must be transferred to a Federal Firearms Licensee ("FFL"). See Government Exhibit C.

Government Exhibit D: Government Exhibit D lists electronic media, each of which has one or more classified files on it, as well as a single paper document marked as classified. See Government Exhibit D; see R. 73, 11/20/20 Hearing Tr. at 592 - 594. Specifically, the Court reviewed in camera Government Exhibit 1, a document detailing certain information that the United States Department of Defense ("DOD") deems classified or secret. See R. 74, 11/20/20 Hearing Tr. at 631. Secret or classified information like that contained in Government Exhibit 1 can be found on each of the electronic devices in Government Exhibit D. See R. 73, 11/20/20 Hearing Tr. at 592 – 594. Under DOD regulations, the presence of a single classified item on a piece of electronic media renders that entire electronic media classified. Id. at 595-96.

Based on the foregoing, the Court finds that the paper document as well as each item of

electronic media listed on Government Exhibit D constitutes classified material. See id. at 592 – 96. It should be noted that Mr. Montgomery lacks a security clearance and therefore is not entitled to access or handle these materials. See id. The Court further finds that, where, as here, classified information has been improperly placed on electronic media, DOD regulations require the destruction of that electronic media. See id.

**Government Exhibit E:** Government Exhibit E contains two categories of materials: (1) government/United States property; and (2) proprietary information that belonged to a defense contractor. Specifically, based on the exhibits of the United States and the testimony of Special Agent Clark, the Court finds that the following items on Government Exhibit E are marked as government property or as otherwise belonging to the United States: Items 1B92 (documents), see Gov. Ex. 6, R. 73, 11/20/20 Hearing Tr. at 599; 1B91, 1B66, 1B63, IB62 (various military badges and government identifications), see Ex. 7, R. 73, 11/20/20 Hearing Tr. at 599-600; Items 1B20, see Gov. Ex. 8, R. 73, 11/20/20 Hearing Tr. at 600-601; Items 1B19 (electronic media), see Gov. Ex. 9, R. 73, 11/20/20 Hearing Tr. at 601; 1B70 (documents), see Gov. Ex. 10, R. 73, 11/20/20 Hearing Tr. at 601; 1B132, 1B90, 1B36, ATF63(k), ATF 63(n) (electronic media), see Gov. Ex. E, 11/20/20 Hearing Tr. at 601); ATF58, 1B13 (testing information); the Court therefore concludes that these items constitute property of, and belong to, the United States.[3]

Based on similar evidence, the Court finds that the remaining items on Government Exhibit E – namely, 1B127, 1B108, 1B57, 1B54, 1B39, and 1B15 (electronic media) – constitute

---

3 The Court notes that items ATF 50, 51, and 52 are components to the Air Force missile warning system that Mr. Montgomery admitted that he improperly possessed and attempted to convert to his own use. These items therefore also belong to the United States.

proprietary information that belongs to various defense contractors, not Mr. Montgomery.[4] See Gov. Exs. 4-5; R. 73, 11/20/20 Hearing Tr. at 597-98, 601. Mr. Montgomery (or a company for whom he worked) previously served as a subcontractor with various defense contractors – including General Dynamic, DRA, and MacAulay-Brown. R. 73, 11/20/20 Hearing Tr. at 597-98, 601. Generally (and as evidenced by written contracts between Mr. Montgomery and at least two of these companies), a subcontractor must return proprietary information to the defense contractor once the subcontractor ended its work on the project. See Gov. Exs. 4-5; R. 73, 11/20/20 Hearing Tr. at 597-98, 601. Here, Mr. Montgomery's relationship with those companies ended long ago and yet he still was in possession of their proprietary information. Other than generalized claims that he properly possessed these materials, Montgomery offered no evidence to substantiate his claim that he had the right to keep proprietary information relating to the Air Force missile warning system from these companies. See generally R. 73, 11/20/20 Hearing Tr. These items therefore also belong to the United States. Accordingly, the Court concludes that the items identified above do not belong to Mr. Montgomery.

        **Government Exhibit F:** This exhibit contains a mixture of items. The parties have reached an agreement concerning the return of a variety of property on Government Exhibit F, including certain papers, manuals, and physical items.[5] See R. 73, 11/20/20 Hearing Tr. at 609-10 (agreeing to return manuals, ball bearings, lead pipe, etc.).

---

4 For similar reasons, the Court also finds that, in the alternative, even if not property of the United States, Items 1B132, 1B127, 1B108, 1B54, 1B39, 1B36, ATF 63(k) would constitute proprietary information of a defense contractor, not the property of Mr. Montgomery. See R. 73, 11/20/20 Hearing Tr. at 598.

5 Specifically, the United States has agreed to return items 1B99 (aluminum powder); 1B97 (unmixed cannisters of aluminum powder, aluminum nitrate); 1B96 (bag of ball bearings); 1B94 (empty cannisters with residue); 1B89 (jar); 1B88 (lead pipe with thread); 1B87 (modified lead cap); 1B84 (aluminum powder); 1B81, 1B82, 1B83 (ammonium nitrate powder); 1B71 (laptop with 3D printer); 1B61, 1B56, 1B40, 1B34, 1B33, ATF23, 1B30 (books and paperwork); 1B29 (container with residue).

The United States has opposed the return of the remaining items on the list. Specifically, ATF 73 is an unregistered silencer that Mr. Montgomery forfeited to the United States. See R. 62, Judgment. ATF 64 contains blasting caps, which are an explosive under federal law, see, e.g., 18 U.S.C. §§ 841(c)(explosive materials include detonators), § 841(f) (detonators including blasting caps), and may only be owned, transferred and possessed by certain licensed entities. See generally 18 U.S.C. § 842 (defining unlawful acts concerning the transfer, possession and storage of explosives); 27 C.F.R. 555.201 et seq. Items 1B95, 1B86, 1B31, 1B32 are either exploding targets or contain mixed Tannerite, all which are considered dangerous ordinance under Ohio law. See O.R.C. § 2923.11(K)(3) (dangerous ordinance includes "sensitized ammonium nitrate"); Ohio Department of Commerce, Division of State Fire Marshal, Guidance on Explosive Targets (June 28, 2013) (indicating that Tannerite and exploding targets constitute dangerous ordnance – namely, sensitized ammonium nitrate – under Ohio law and therefore are illegal to possess). Finally, Items 1B76, 1B85, 1B93, 1B98, 1B100, 1B101, 1B102, 1B104 are smokeless powder or gun powder; these items constitute ammunition under federal law. See 18 U.S.C. § 921(a)(17)(A) ("ammunition" includes "powder").

## II. ANALYSIS

### A. General Principles

Federal Rule of Criminal Procedure 41(g) provides that "a person aggrieved" by the federal seizure and subsequent "deprivation of property may move for [its] return." Fed. R. Crim. Proc. 41(g). As a general rule, the United States properly may retain seized property during the pendency of an investigation of a defendant through completion of the criminal case against him. See *United States v. Bowker*, 372 F.3d 365, 387 (6th Cir. 2004) (stating "once the government's need for

[seized property] has ended", court has jurisdiction to determine whether it should be returned to owner), vacated on other grounds by, 543 U.S. 1182; *United States v. Hess*, 982 F.2d 181, 186 (6th Cir. 1992) (indicating "seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated"); *United States v. Farrell*, 606 F.2d 1341, 1343 (D.C. Cir. 1979) (law enforcement may retain lawfully seized property until the conclusion of a criminal case). When a defendant files a motion for return of property at the conclusion of a criminal case, it does not automatically compel the release of federally-seized items to him. He has an obligation to demonstrate that he is "lawfully entitled to possess" this property. *United States v. Headley*, 50 Fed. Appx. 266, 267 (6th Cir. 2002) (discussing convicted felons efforts to seek return of firearms); *United States v. Francis*, 646 F.2d 251, 262 (6th Cir. 1981). Moreover, "a defendant's right to the return of lawfully seized property is subject to any continuing interest the government has in [it.]" *United States v. Duncan*, 918 F.3d 647, 654 (6th Cir. 1990). "The government's interest may take different forms as long as it is a legitimate interest." Id.

To that end, the United States cannot be compelled to surrender to a defendant contraband in its custody, such as turning over firearms to a convicted felon, see *Henderson v. United States*, 575 U.S. 622, --, 135 S. Ct. 1780, 1786 (2005) (federal law prohibits release of seized firearms to a prohibited person), or releasing to someone electronic media that contains classified information. See In re Search Warrant for the Person of John F. Gill, 2014 WL 1331013, at *2 (E.D.N.C. Mar. 31, 2014) (denying motion for return of iPhone containing classified information); *Roark v. United States*, 2015 WL 2085193, at *3 (D. Or. May 15, 2015) (classified files belong to the United States and cannot be returned to a claimant). Nor may a defendant seek the return of United States property seized from his possession; such items always belong to the government and therefore

cannot lawfully be returned to him. See *United States v. Hoffman*, 2018 WL 5973763, at *3 (E.D. Va. Nov. 14, 2018) (concluding that petitioner "lacks entitlement to lawful possession of" government property taken from him). Similarly, he is not entitled to the return of property over which he has no possessory interest, i.e., items that do not belong to him. See *United States v. Pierre*, 484 F.3d 75, 87 (1st Cir. 2007) ("[a] Rule 41(g) motion is properly denied if the defendant is not entitled to lawful possession of the seized property"). In such cases, a court should deny a motion for return of property and allow the United States to dispose of the items as the government sees fit. See, e.g., *Duncan*, 918 F.3d at 654.

**B. Property from the GCSO**

The Court will find moot Mr. Montgomery's motion to return property from the GSCO – namely, the over 100 firearms that this state entity seized from him during 2015. See R. 56.1, GCSO Inventory. First, in filings with the Court, Mr. Montgomery has acknowledged that state authorities already returned these firearms to him. That circumstance alone renders that portion of his motion moot. Second, he has failed to establish that the United States ever had possession of this property. They do not appear in Government Exhibits A through F, which (outside of Mr. Montgomery's cell phone) constitute the universe of items that the United States seized and held in connection with the case. When questioned whether any items were missing from these documents, Mr. Montgomery confirmed that there was none other than cell phone. For these reasons, this portion of his motion is denied.

**C. Items on Government Exhibit D**

The Court likewise denies Mr. Montgomery's motion seeking return of the items on Government Exhibit D. The Court already has concluded that each of these items is

classified/secret. It is well-established that classified information is the property of the United States, and individuals do not have a right to such material. See *United States v. Fowler*, 932 F.2d 306, 309– 10 (4th Cir. 1991) (copies of classified government documents are property of the United States). Classified material in the possession of someone not cleared to have it also is considered "contraband." *United States v. Moussaoui*, 2002 WL 32001771 at *4 (E.D. Va. 2002). In any event, a defendant is not entitled to the return of property that has classified information stored on it. See, e.g., In re Search Warrant for the Person of John F. Gill, 2014 WL 1331013, at *2 (E.D.N.C. Mar. 31, 2014) (denying motion for return of iPhone containing classified information); *Roark v. United States*, 2015 WL 2085193, at *3 (D. Or. May 15, 2015) (classified files belong to the United States and cannot be returned to a claimant).

At the evidentiary hearing, Mr. Montgomery speculated whether DOD properly classified these materials. However, the decisions of the executive branch concerning the classification of materials is beyond the scope of judicial review. See *United States v. Marchetti*, 466 F.2d 1309, 1317 (4th Cir. 1972) ("[T]he process of classification is part of the executive function beyond the scope of judicial review."); *United States v. Collins*, 720 F.2d 1195, 1198 n.2 (11th Cir. 1983) ("It is an Executive function to classify information, not a judicial one"). Based on the scant record before it, the Court declines to second-guess DOD's classification determination here.

In sum, the items on Exhibit D contain classified/secret information and therefore belong to the United States, not Mr. Montgomery. The Court therefore authorizes the United States to dispose of the items on Exhibit D in any manner it sees fit – including destruction consistent with DOD policies.

### D. Items on Government Exhibit E.

The Court also denies Mr. Montgomery's motion seeking the return of the items on Government Exhibit E. To obtain the return of property, a claimant must demonstrate that he is lawfully entitled to it. See *Headley*, 50 Fed. Appx. at 267 (discussing that claimant must be able to lawfully possess the items that he seeks); see also *United States v. Howell*, 425 F.3d 971, 974 (11h Cir. 2005) ([i]n order for an owner of property to invoke Rule 41(g), he must show that he had a possessory interest in the property seized by the government"). Here, the Court has concluded that the property on Exhibit E belongs either to the United States or to third party defense contractors, not to Mr. Montgomery. Mr. Montgomery therefore is not entitled to the return of these items as he has failed to establish his lawful ownership interest in them. See, e.g., *Hoffman*, 2018 WL 5973763, at *3 (concluding that petitioner "lacks entitlement to lawful possession of" government property taken from him); *United States v. Hamilton*, 2016 WL 4787279, at *3 (N.D. Ga. June 3, 2016) ("Defendant therefore lacks standing to seek the return of this material" as "the specific property he seeks to recover belongs to a third party"). For these reasons, his motion to return the items on Exhibit E is denied.

**E. Items on Government Exhibit F.**

As the government does not oppose the return of a substantial portion of his motion concerning the items on Exhibit F, see supra footnote 5, the Court grants request to return those items.   The Court denies, however, the request to return the remaining property on that list to Mr. Montgomery. First, he has agreed to forfeit to the United States ATF 73 (the unregister silencer). The item now belongs to the United States and therefore has no property interest in it. See *Pierre*, 484 F.3d at 87 ("[a] Rule 41(g) motion is properly denied if the defendant is not entitled to lawful possession of the seized property").

12

ATF 64 (blasting caps) as well as 1B95, 1B86, 1B31, and 1B32 (mixed Tannerite and exploding targets) constitute contraband under federal and state law. The former is an explosive under federal law that may only be lawfully possessed by certain regulated licensees, see, e.g., 18 U.S.C. §§ 841(c)(explosive materials include detonators), § 841(f) (detonators including blasting caps), while the latter constitutes prohibited dangerous ordinance under state law. See O.R.C. § 2923.11(K)(3) (dangerous ordinance includes "sensitized ammonium nitrate"); Ohio Department of Commerce, Division of State Fire Marshal, Guidance on Explosive Targets (June 28, 2013) (indicating that Tannerite and exploding targets constitute dangerous ordnance – namely, sensitized ammonium nitrate – under Ohio law and therefore are illegal to possess). As contraband, Mr. Montgomery is not entitled to these items, and United States has an interest in retaining them. *Hess*, 982 F.2d at 186 (government has no obligation to return contraband). His motion to return these items therefore is denied.

Finally, the various gun and smokeless powder, see Gov. Ex. F, Items 1B76, 1B85, 1B93, 1B98, 1B100, 1B101, 1B102, 1B104, constitute ammunition under federal law, see 18 U.S.C. § 921(a)(17)(A) ("ammunition" includes "powder"); as a convicted felon, Mr. Montgomery cannot possess them. See *Henderson v. United States*, 575 U.S. 622, --, 135 S. Ct. 1780, 1786 (2005) (federal law prohibits release of seized firearms to a prohibited person). The United States, however, has indicated Case: 3:17-cr-00174-TMR Doc #: 76 Filed: 01/22/21 Page: 18 of 22 PAGEID #: 693 18 that it will release Items 1B76, 1B85, 1B93, 1B100, 1B101, 1B102, 1B104 to the same FFL who Mr. Montgomery designates to accept the items listed in Exhibit C.

### III. CONCLUSION

As addressed in the Court's previous entry, see 9/1/2020 Minute Entry, as well as in this

order:

1. The United States has agreed to return directly to Mr. Montgomery: (1) the items listed in Exhibit A; (2) cellular phone seized from him at the time of his arrest; (3) ATF 67, a book listed on Government Exhibit C; (4) 1B99, 1B97, 1B96, 1B94, 1B89, 1B88, 1B87, 1B84, 1B83, 1B82, 1B81, 1B71, 1B61, 1B56, 1B40, 1B34, 1B33, ATF23, 1B30 and 1B29 listed on Exhibit F. The Court therefore **GRANTS** his motion to return these items and **ORDERS** the Government to do so.

2. The United States already has returned to Mr. Montgomery items in Government Exhibit B. The Court therefore finds as **MOOT** his motion to return these items.

3. The United States has agreed to release to a designated FFL: (1) the transferable firearms listed in Government Exhibit C; and (2) 1B76, 1B85, 1B93, 1B100, 1B101, 1B102, 1B104 (various gun and smokeless powders) listed in Government Exhibit F. The Court therefore **GRANTS** his motion to return these items.

4. The Court **DENIES** Mr. Montgomery's motion to return all other property listed on GOVERNMENT EXHIBITS D, E, and F, including: (1) all of the items listed on Exhibit D; (2) all of the items listed on Exhibit E; and (3) ATF 73 (the unregistered silencer), ATF 64 (blasting caps), and 1B95, 1B86, 1B31, 1B32 (mixed Tannerite and exploding targets) on Government Exhibit F. The Court **ORDERS** that the United States may dispose of these items as it sees fit.

The Court hereby **ORDERS** the following procedures concerning those items that will be returned directly to Mr. Montgomery (hereinafter "Returning Property") as well as those items that will be transferred to an FFL (hereinafter "FFL Property").[6] Mr. Montgomery shall retrieve the

---

6 Mr. Montgomery previously agreed to retrieve these items from the FBI on December 18, 2020. As detailed in the United States' Motion for Status Conference, Mr. Montgomery ultimately declined to do so, citing, among other

Returnable Property from the FBI at its offices within **45 days** from the entry of this Order. Mr. Montgomery shall also have an FFL retrieve the FFL Property from the FBI at its offices within 45 days from the entry of this Order. Mr. Montgomery shall schedule this date with FBI through the assistance of his counsel or probation officer. If Mr. Montgomery fails to retrieve the property within that timeframe, the Court will find that property has been **abandoned** to the United States and will authorize the United States to dispose of the property as it sees fit.

For the purpose of facilitating the return of property, the Court authorizes Mr. Montgomery to have contact with the FBI, Special Agent Clark, or any other agent or employee of that agency. The Court declines to dictate to the FBI the procedures that it uses at its offices concerning the return of the above described property.

**DONE** and **ORDERED** in Dayton, Ohio on Wednesday, February 17, 2021.

s/Thomas M. Rose

_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

---

reasons, his concern that contact with the Special Agent Clark during the property transfer would violate his conditions of supervised release.